RENDELL, Circuit Judge,
concurring.
While I agree that there is no meaningful relief that we can afford plaintiffs based on the development of the parcel at issue, I write separately to note an area of confusion that we would have encountered regarding the scope of analysis under NEPA, had we reached the merits. The regulations at issue require an assessment of the environmental impact of the specific activity for which a permit is required— here, that would mean the filling of the wetlands. 33 C.F.R. Part 325, App. B, 7.b(l) (“The district engineer should establish the scope of the NEPA document (e.g., the EA or EIS) to address the impacts of the specific activity requiring a DA permit. ...”). However, the examples set forth thereafter speak in terms of the impact of what is constructed on the area in question — here, that would require assessing the impact of the structure to be built and the activities to be conducted. 33 C.F.R. Part 325, App. B, 7.b(3) (“[I]f an applicant seeks a DA permit to fill waters or wetlands on which other construction or work is proposed, the control and responsibility of the Corps, as well as its overall Federal involvement would extend to the portions of the project to be located on the permitted fill.”).
The two assessments are vastly different. There are various sections of the *174 regulations that would seem to favor each interpretation. Several courts have had to grapple with the language of the regulation, and most have relied on the example to support the more comprehensive assessment that the appellants urge but was not performed here. See Ohio Valley Env. Coalition v. U.S. Army Corps of Eng’rs, 479 F.Supp.2d 607, 655 (S.D.W.Va.2007) (“if that part of the project which is located on the fill may be excluded, these regulations are rendered meaningless. The Corps would never have to consider more than the filled portion of the stream. This result would be contrary to the clear statement in the second paragraph of § 7(b)(3)....”); Stewart v. Potts, 996 F.Supp. 668, 682 (S.D.Tex.1998) (concluding that the Corps acted irrationally by excluding the forest located on the wetlands from its NEPA review). A clarification of the regulation itself would be helpful to the courts, and, presumably, the agency.
I also write to note that, although we conclude that the case is moot, this conclusion is dictated by the specific circumstances presented here. In the present case, the Partnership has already engaged in mitigation of over-600 acres of wetlands and filled all but .12 acres of contaminated and dispersed wetlands. Edifices have been constructed on top of almost all of the fill, rendering remediation of the filled wetlands impossible. At this point in the process, there simply is no possible remedy for appellants.
This situation is not of plaintiffs’ creation, for they moved swiftly. However, the developer moved with lightning speed to accomplish the fill.[4] We need to recognize the danger inherent in this fact pattern where, following the issuance of an Army Corps of Engineers permit, the developer will rush to fill the wetlands and commence construction, disrupting the wetlands, mooting the controversy, and rendering any judicial relief impractical if not impossible. In meritorious cases, this haste to fill the wetlands nullifies the very essence of the statutes and regulations designed to protect our environment.
Litigants and districts courts alike should be mindful of this risk. Where there is potential for harm, a temporary restraining order or a stay pending a decision on a motion for a preliminary injunction may be appropriate. Ideally, the regulations or implementing statute would be amended to provide for some limited period of time between issuance of the permit and the start of construction in order to facilitate judicial review and preserve meaningful remedies, in the interest of all concerned.

. The Corps issued a permit on March 18, 2005; Sierra Club filed its compliant on March 30th and moved for a preliminary injunction on May 5th. By May 25th, 5.44 acres of wetlands had been filled. The District Court denied the preliminary injunction on July 7, 2005.